# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 4, 2017

Lyle W. Cayce
Clerk

No. 14-60911

G. HARRISON SCOTT; JOHNNY C. CROW; SHARRY R. SCOTT,

>  Petitioners

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

>  Respondent

Petition for Review of an Order of the
Federal Deposit Insurance Corporation
FDIC No. 12-276K
FDIC No. 12-277K
FDIC No. 12-278K

Before BARKSDALE, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

G. Harrison Scott, Johnny Crow, and Sharry Scott petition for review of a final order by the Federal Deposit Insurance Corporation ("FDIC") Board of Directors. The FDIC Board found that Petitioners violated Regulation O of the Federal Reserve Board ("Regulation O"), 12 C.F.R. § 215, when the Bank of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60911

Louisiana made improper loans and failed to collect overdraft fees from Bank insiders. For the following reasons, we DENY Scott, Crow, and Scott's petition.

## BACKGROUND

On October 22, 2013, the FDIC initiated the present action against Scott, Crow, and Scott, individually, and as institution-affiliated parties of the Bank of Louisiana. In order to promote compliance with fiduciary obligations, the FDIC is empowered to impose civil money penalties ("CMPs") on bank directors for their violations or their bank's violations of law or regulation. *See Lowe v. FDIC*, 958 F.2d 1526, 1534-35 (11th Cir. 1992). At the time of the violations at issue in this case, the three Petitioners were bank directors: G. Scott was President of the Bank, Chairman of the Board of Directors, and a member of the Executive Committee. Crow and S. Scott were members of the Board of Directors and the Executive Committee.

In its Notice of Assessment of Civil Money Penalties ("Notice"), the FDIC alleged that Scott, Crow, and Scott violated Regulation O when the Bank of Louisiana made, and then renewed, loans to Director K, which "involve[d] more than the normal risk of repayment." *See* 12 C.F.R. § 215.4(a).

In October 2009, Director K submitted a loan application to the Bank seeking $75,000 in "working capital" to bring current three outstanding loans from 2008 totaling approximately $500,000. At the time of the loan application, Director K was 81 days past due on the 2008 loans. In addition, he had been 30 days or more past due on the loans on 26 occasions, and he had been assessed late fees 35 times.

On his application, Director K estimated his annual income as $157,788 based on previous tax returns. He also disclosed $75,000 in credit card debt. As collateral, Director K listed: (1) an assignment of interest in the New Orleans Community Housing Development Corporation; (2) an assignment of

No. 14-60911

fees in two cases being handled by his law firm; and (3) a first mortgage on a condominium, which had previously been valued at $825,000 and $875,000. The mortgage, however, was already pledged as collateral for his 2008 loans. In addition, the appraisals of the condominium submitted by Director K were over two years old and dated from before the 2008 financial crisis. The Bank of Louisiana Board did not obtain an independent appraisal of the condominium's value as of October 2009.

According to his credit report, Director K was more than 120 days past due and $42,412 in arrears on a mortgage loan held by a different bank, and between 31 and 60 days past due on two revolving credit lines totaling $7,841. After reviewing Director K's loan application, Petitioner G. Scott wrote a memo to the Bank Board, questioning, "[i]f [Director K] cannot pay current loan for $100,000, interest only, how can he pay interest on new loan?" Nonetheless, the Bank Board and Loan Committee approved Director K's $75,000, 8 percent interest-only loan with the principal due at maturity six months later.

The day after the Bank Board approved the $75,000 loan, Director K made payments totaling $75,000 on one of the 2008 loans. Over the following year, Director K was past due on the 2008 and 2009 loans on 20 occasions. In July 2010, Director K applied for, and was granted a renewal of, each of the 2008 and 2009 loans, payable on July 30, 2011.

The FDIC's Notice also alleged further Regulation O violations regarding Officer P. According to the Notice, the Bank failed to charge Officer P overdraft fees on two occasions in December 2010 and January 2011. *See* 12 C.F.R. § 215.4(e). In addition, the Bank approved a loan to Officer P and his wife in July 2011, which was greater than $100,000 and secured by a second mortgage in violation of Regulation O. *See* 12 C.F.R. §§ 215.5(c)(4) and 337.3(c)(2).

On February 28, 2014, following discovery, the FDIC moved for partial summary disposition against Scott, Crow, and Scott, asserting no genuine

3

No. 14-60911

issue of material fact regarding the Regulation O violations. On March 27, 2014, an Administrative Law Judge ("ALJ") granted the FDIC's motion for partial summary disposition and subsequently conducted a one-day hearing in New Orleans, LA, to consider evidence regarding the amount of the CMPs to be imposed. On July 2, 2014, the ALJ issued a 29-page Recommended Decision recommending that each Petitioner be assessed a CMP of $10,000. The FDIC Board of Directors adopted the ALJ's recommendations on November 18, 2014. Petitioners seek review of the FDIC Board's final order.

## STANDARD OF REVIEW

"[T]he findings of the FDIC Board are to be set aside only if found to be unsupported by substantial evidence on the record as a whole." *Bullion v. FDIC*, 881 F.2d 1368, 1372 (5th Cir. 1989). "Substantial evidence is such relevant evidence a reasonable person would deem adequate to support the ultimate conclusion." *Grubb v. FDIC*, 34 F.3d 956, 961 (10th Cir. 1994). The FDIC's standard for summary disposition is similar to the standard for summary judgment. *See* 12 C.F.R. § 308.29(a); *see also In re Cirino*, 2000 WL 1131919, at *23 (FDIC 2000). Consequently, we review a grant of summary disposition as if it were a grant of summary judgment. *See Abbott v. Equity Group, Inc.*, 2 F.3d 613, 618 (5th Cir. 1993) (articulating the summary judgment standard). "The remedies or penalties directed by the agency are not to be disturbed unless they constitute an abuse of discretion or are otherwise arbitrary and capricious." *Bullion*, 881 F.2d at 1372.

No. 14-60911

## DISCUSSION

Scott, Crow, and Scott present four issues for our review.[1] They contend that the FDIC Board's findings regarding the approval of loans to Director K and Officer P and the failure to assess overdraft fees to Officer P are unsupported by substantial evidence. They also claim that the FDIC abused its discretion and was arbitrary and capricious by assessing each Petitioner a $10,000 CMP. Finally, they argue that the ALJ improperly resolved contested facts at the summary disposition stage. None of Petitioners' arguments are persuasive.

### I.     Loans to Director K involved more than a normal risk of repayment

Under Regulation O, "[n]o member bank may extend credit to any insider of the bank . . . unless the extension of credit . . . [d]oes not involve more than the normal risk of repayment or present other unfavorable features." *See* § 215.4(a)(1)(ii); *see also Bullion*, 881 F.2d at 1374. "The Board's analysis for finding more than the normal risk of repayment or other unfavorable features looks to whether an objective lender at the time the loan was made would have extended the credit based on the available information at that time." *Bullion*, 881 F.2d at 1374.

In *Bullion*, we found a higher than normal risk of repayment based on the following factors:

> [1] [T]he lack of documentation as to the loan and also the collateral which was before the officers when they made the decision to fund the loan, [2] the overvaluation of the assets to support the loan, [3] the borrower and the guarantor's

---

[1] Scott, Crow, and Scott briefed a fifth issue: whether the FDIC Executive Secretary erred by denying their motion for reconsideration. However, we lack jurisdiction to consider that issue because their petition for review does not specify it. *See* Fed. R. App. P. 15(a) (requiring that a petition for review must "specify the order or part thereof to be reviewed").

potential inability to repay the loan based on the then available financial information, and [4] the interest rate set was 25% less than the prime rate.

*Id.* at 1374-75. Though we did not provide a specific formula to determine whether an objective lender would have extended credit, we stated: "The availability of cash to pay off the loan should have been one of the primary considerations of the officers approving the loan." *Id.* at 1375.

Here, a majority of the factors that we identified as determinative in *Bullion* are also present: (1) Director K's loan application did not show that he could cover his monthly debt service obligations given his approximate monthly income—$13,149—and his monthly debt payment—$14,770; (2) Director K was chronically delinquent in servicing his debts; and (3) Director K pledged collateral for which the Bank had not obtained current appraisals even though the most recent appraisals dated from before the 2008 financial crisis.

Scott, Crow, and Scott contend that the loan to Director K did not involve a higher than normal risk of repayment because: (1) the loan was eventually repaid in full; and (2) the appraised value of the condominium offered to secure the loan exceeded the value of the loans. However, we agree with the FDIC Board that these facts alone do not establish a genuine dispute of material fact regarding the issue. First, evidence that a loan is eventually repaid has no bearing on whether a loan involved a higher than normal risk of repayment. *See Bullion*, 881 F.2d at 1374 (defining the relevant inquiry as "whether an objective lender at the time the loan was made would have extended credit"). Second, while the value of pledged collateral is relevant to any loan determination, it is hardly dispositive, especially when a potential borrower has not shown "availability of cash to pay off the loan" and a bank is faced with insufficient "documentation as to . . . the collateral." *Id*. at 1374-76. Because

No. 14-60911

Petitioners have not raised a genuine dispute of material fact regarding whether the loan to Director K involved a higher than normal risk of repayment, we find that the FDIC Board's grant of summary disposition was warranted. *See* 12 C.F.R. § 308.29(a).

## II.   Officer P is an "executive officer" within the meaning of Regulation O

As a preliminary matter, Petitioners concede that they are liable under Regulation O if Officer P is an "executive officer." Regulation O states:

> Executive officer of a company or bank means a person who participates or has authority to participate (other than in the capacity of a director) in major policymaking functions of the company or bank, whether or not: the officer has an official title; the title designates the officer an assistant; or the officer is serving without salary or other compensation. The chairman of the board, the president, every vice president, the cashier, the secretary, and the treasurer of a company or bank are considered executive officers, unless the officer is excluded, by resolution of the board of directors or by the bylaws of the bank or company, from participation (other than in the capacity of a director) in major policymaking functions of the bank or company, and the officer does not actually participate therein.

12 C.F.R. § 215.2(e)(1).

Here, Scott, Crow, and Scott do not contest that Officer P was a vice president. In addition, they acknowledge that Officer P was not "excluded, by resolution of the board of directors or by the bylaws of the bank or company, from participation . . . in major policymaking functions of the bank or company." *Id.* Given that "every vice president . . . [is] considered [an] executive officer[] *unless* . . . excluded, by resolution of the board of directors or by the bylaws of the bank or company, from participation . . . in major policymaking

7

functions of the bank or company," Officer P is an "executive officer" within the meaning of the regulation. *Id.* (emphasis added).

Scott, Crow, and Scott contend that Officer P should not be considered an executive officer because they submitted declarations "averring that Officer P did not participate in or have the authority to participate in major policymaking functions at the Bank." However, their argument is not supported by the plain language of Regulation O. Given that Petitioners have not shown that Officer P was excluded from major policymaking functions by resolution of the board of directors or by the bylaws of the bank or company, we conclude that he is an executive officer. *See id.*

## III. The FDIC did not abuse its discretion in assessing civil money penalties

Any insured depository institution or institution-affiliated party that violates Regulation O shall forfeit and pay a CMP of not more than $7,500 for each day during which such violation continues. *See* 12 U.S.C. § 1818(i)(2)(A); 12 C.F.R. § 308.132(c)(3)(i) (2013).  The FDIC must consider the following mitigating factors when determining an appropriate CMP amount: (1) the size of Respondents' financial resources; (2) the good faith of Respondents; (3) the gravity of the violations; (4) the history of previous violations; and (5) such other matters as justice may require. *See* 12 U.S.C. § 1818(i)(2)(G). The FDIC must also perform a 13-factor analysis found in the Interagency Policy Regarding the Assessment of CMP's by the Federal Financial Institutions Regulatory Agencies, 63 Fed. Reg. 30226 (May 28, 1998).

Here, the ALJ held a hearing on April 16, 2014 to determine an appropriate CMP amount. Prior to that hearing, Scott, Crow, and Scott each stipulated that they had the financial capacity to pay the $10,000 CMP requested by the FDIC. After considering the five mitigating factors and

performing the required 13-factor analysis based on evidence presented at the hearing, the ALJ found that, even though the length of the violations—spanning over 22 months—could have generated a penalty of over $5 million, a $10,000 CMP for each Respondent was appropriate. Given that the CMP amount was within the statutory range and the ALJ correctly considered the mitigating factors and 13-factor Interagency Policy Analysis, the FDIC Board's assessment of a $10,000 CMP for each Respondent did not constitute an abuse of discretion and was not arbitrary and capricious.

## IV. The Administrative Law Judge did not improperly resolve contested factual issues

Petitioners contend that the ALJ improperly resolved contested factual issues by disregarding relevant evidence, making credibility determinations, and ignoring new evidence after the close of summary disposition. After reviewing the record, we agree with the ALJ that Petitioners did not present evidence, demonstrating a genuine dispute of material fact. *See* 12 C.F.R. § 308.29(a). Furthermore, the FDIC Board properly found that Petitioners could not proffer new evidence not originally presented before the ALJ after the close of summary disposition. *See* § 308.39(b)(2) ("No exception need be considered by the Board of Directors if the party taking exception had an opportunity to raise the same objection, issue, or argument before the administrative law judge and failed to do so."). Thus, the ALJ did not improperly resolve contested factual issues.

## CONCLUSION

For the reasons stated above, the petition is DENIED.